**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RAYMOND P. LEE, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AUSTAL, USA, LLC,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

## I. INTRODUCTION

1.     This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Act of Congress commonly known as "The Civil Rights Act of 1964," 42 U.S.C. §§ 2000(e) et seq. as amended by "The Civil Rights Act of 1991," 42 U.S.C. § 1981a (hereinafter "Title VII") which provides for relief against discrimination in employment on the basis of race and for unlawful retaliation related thereto. This action is also brought under 42 U.S.C. § 1981 which provides for relief against discrimination in employment on the basis of race and for unlawful retaliation related thereto. The Plaintiff seeks compensatory and punitive damages, and requests a jury trial pursuant to 42 U.S.C. § 1981a.

## II.   JURISDICTION AND VENUE

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(4); 28 U.S.C. §§ 2201 and 2202; and 42 U.S.C. § 2000e-5(f)(3).

3.      The unlawful employment practices alleged hereinbelow were committed by the defendant within Mobile County, Alabama. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(g).

## III. PARTIES

4.      Plaintiff, Raymond P. Lee, Jr. (hereinafter "Lee" or "Plaintiff"), is an African-American male citizen of the United States, and a resident of Mobile County of the State of Alabama. Plaintiff was formerly employed by the Defendant.

5.      Defendant, Austal, USA, LLC (hereinafter "Austal" or "Defendant"), is a business that builds ships and is a defense contractor.  Austal is a business operating in the Southern District of Alabama.

6.      Austal is an employer within the meaning of 42 U.S.C. § 2000e(a) and (b) and was the employer of the Plaintiff. At all times relevant to this action Austal has employed at least fifteen (15) or more employees.

## IV. ADMINISTRATIVE EXHAUSTION

7.      Plaintiff has fulfilled all conditions precedent to the institution of this action including those statutory requirements under Title VII. Plaintiff timely filed two (2) Charges of Discrimination (Charge No. 420-2019-00861 and Charge No. 420-2020-00333) with the Equal Employment Opportunity Commission ("E.E.O.C.") within 180 days of occurrence of the last discriminatory/retaliatory act(s). Plaintiff also timely files this Complaint within ninety (90) days of the receipt of a Notices of Right To Sue issued by the E.E.O.C.

## V.    FACTS AND CLAIMS

8.      Plaintiff is African-American.

9.      Plaintiff began working for Austal in or about June 2016 as a Ship Fitter.

10.     In May 2019 the Plaintiff began being subjected to ongoing acts of racial discrimination by Caucasian foreman/supervisor, Sheryl Kaiser, including being subjected to disparate acts of discipline to which his similarly situated Caucasian co-workers were not subjected.

11.     At the time of the events which give rise to the present suit, the Plaintiff was assigned to work in the non-production area of the Harness Cage, as he was on a worker comp light duty assignment due to a leg injury and was restricted from working in production areas.

13.     Plaintiff literally worked side by side in this non production area of the Harness Cage with a white employee, Joey Heflin, who was also placed in the Harness Cage due to having suffered a worker comp injury resulting in him having to wear an open toed boot/cast; thus making it legally impossible and an OSHA violation for Heflin to work in a production area. Heflin, in fact, was forced to remain in this non-production area because his supervisor, Luis Rizario, and the Safety Foreman would not allow him to be in a production area as he could not physically wear steel toed boots at the time due to his injury.

14.     The Austal shipyard is a massive site (the size of 10 football fields) and is divided into two sub-areas: MMFI and MMFII. The Harness Cage is located in the area of MMFI. The Harness Cage is physically located underneath a stairway and consists of 4x7 foot room with a metal roof and chain link fence walls which were also covered with woven plastic slats to prevent any debris, etc., from possibly entering this non-production area.

15.     As the Harness Cage is a very small 4x7 foot area, when it is occupied by two (2) people they are literally sitting within about a foot from one another.

16.     These areas (and the stairs leading up to them) are non-production areas. They are marked as "safety zones," and as such the managers, safety members, and employees that use these stairs and offices are not required to wear PPE (Personal Protection Equipment such as steel toe boots, hard hats, earplugs, or glasses) in these areas.

17.     Austal employees are only required to wear PPE in "areas where its use is mandated," and not in every area of the facility.

18.     The area immediately outside of the Harness Cage is physically marked with yellow lines on the floor where the forklifts drive and demarcating it as a "safety zone," where employees may move about without wearing PPE and be considered safe.

19.     Additionally, in this same area there are drink machines, an ATM machine, and the break room area–all "safety zones" where employees are not required to wear PPE to be considered safe.

20.     Both the Plaintiff and Joey Heflin had previously been assigned to the Harness Cage in relation to light duty work and neither had ever been required to wear PPE in that non-production, safety zone, light duty area.

21.     On May 24, 2019, Dayshift Foreman Sheryl Kaiser traveled from MMFII to MMFI and stuck her head inside the Harness Cage.  At that time both Plaintiff and Joey Heflin were in the Cage.

22.     Neither Plaintiff nor Heflin were wearing hard hats and both had their cellular phones in plain sight. Additionally, Heflin was not wearing steel toed boots due to his injury.

23.     Kaiser saw Joey Heflin sitting right next to Plaintiff also not wearing his PPE and with his cell phone out.

24.     Kaiser pulled Plaintiff out of the Harness Cage and informed him that she was going to write him up over the PPE and phone. She then popped her head back into the cage, looked at Heflin still on his phone and told him to put his hardhat and "eyes" (safety glasses) on.

25.     Plaintiff then questioned Kaiser as to why she was writing him up and not Heflin. Kaiser responded that she had no time for these antics and that, "he's [Heflin] not like you."

26.     Kaiser saw both the Plaintiff and Heflin engaged in identical behavior at identical times as they sat next to each other and she only subjected the Plaintiff, the African American employee, to discipline and when questioned about this she told the Plaintiff that Heflin (white) was, "not like you."

27.     Plaintiff opposed the discriminatory treatment, telling Kaiser this was a form of harassment and discrimination because he had done nothing wrong.

28.     On that same day, May 24, 2019, Kaiser admitted to Plaintiff that she was aware of the fact and understood that Heflin was not wearing PPE and also had his phone out; that she had the authority to write Heflin up, and that she had no problem writing Heflin up.  Yet she did not issue Heflin any discipline at that time for any infractions.

29.     On this same day during a meeting held about the matter between Plaintiff, Kaiser, and Human Resources employee Ashley McLaney, Ms. Kaiser stated that she did see Heflin without his PPE as well because she leaned in and looked around the corner. Yet Heflin received no discipline for the alleged infractions.

30.     After this incident, both Plaintiff and Joey Heflin repeatedly asked multiple safety personnel, including the Safety Foreman/Supervisor, if they were required to wear PPE in the non-production, safety sone, light duty Harness Cage area and both employees were repeatedly told, "no," that they did not need to wear the PPE in that area.

31.     After Plaintiff received the May 24, 2019, write up he tried to file a complaint of race discrimination over it with Ashley McClaney in Human Resources. Plaintiff told her what Kaiser had said about Heflin not being, "like [him]."

32.     McClaney refused to take the Plaintiff's complaint of discrimination, told him that she would not write this up, and that he needed to just take the discipline.

33.     Plaintiff also tried to take his complaint of race discrimination to Rodney, the Human Resources Director, and was told that Rodney would look into it.

34.     But the Plaintiff never heard back from Rodney about his complaint. So, the Plaintiff followed up and called Rodney and asked what should he do? Rodney told the Plaintiff to take it up with McClaney.

35.     Plaintiff did so and McClaney informed him that there was nothing she could do and that the write-up would stand.

36.     About two days later, on June 3, 2019, Sheryl Kaiser came to the Harness Cage and again saw both the Plaintiff and Joey Heflin sitting side by side in the 4x7 foot space. She again saw that neither of them were wearing full PPE. Kaiser said to both men, "Didn't I tell y'all you have to have your PPE on?"

37.     Heflin replied and told Kaiser that they did not have to wear PPE in the Cage because it was not a production area and that the Safety Foreman had said that it was okay.

38.     Kaiser again disciplined the Plaintiff for this alleged infraction–issuing him a write-up and a 3 day suspension.

39.     And again, Kaiser did not discipline Heflin in any way for the identical issues.

40.     Plaintiff told Kaiser that he wanted to take the matter to Human Resources.

41.     Plaintiff went to Human Resources and complained again to McClaney about the discriminatory treatment with Heflin. McClaney said she would look into it; however Plaintiff never heard back from her about this complaint.

42.     After this discipline the Plaintiff again went to Rodney (HR Director ) and told him that the Plaintiff felt like he was being discriminated against and harassed because he was treated differently than Heflin (white) and because of Kaiser's statement that Heflin wasn't, "like you."

43.     Rodney told the Plaintiff that he had been instructed not to look into the issue by legal counsel because the Plaintiff had told him that he was going to get an attorney and that Austal has a floor full of attorneys waiting on him.

43.     Plaintiff replied to Rodney that he had never said that he was getting an attorney– just that he would take the matter higher if he needed to. Rodney then said that he would look into the matter but, again, the Plaintiff never heard back from him about the matter.

44.     On or about June 20, 2019, the Plaintiff filed a Charge of Discrimination (Charge No. 425-2019-00861) with the E.E.O.C. asserting claims of race discrimination.

45.     Austal was provided with the June 2019 EEOC Charge and submitted a response thereto by August 1, 2019.

46.     Shortly thereafter the Plaintiff was terminated on August 8, 2019, after receiving a third discipline from Ashley McClaney for the same alleged infractions as above regarding PPE gear (despite still working in a light duty, non production, safety zone area).

47.     On this date, as before, Joey Heflin was again sitting right beside the Plaintiff also committing the same alleged PPE infractions, and yet Heflin was not terminated.

48.     Since the Plaintiff's termination, he has been made aware that employees are still placed in the Harness Cage due to light duty worker comp restrictions that cannot and do not

wear PPE gear. For example, an employee named Dustin was placed in the cage during September/October 2019 and he does not and cannot wear a hard hat due to suffering from a head injury.

49.     The Plaintiff has been discriminated against on the basis of his race (African-American) by being subjected to discriminatory discipline and termination in contrast to similarly situated white employees. This conduct was wilful, malicious, and in wanton disregard of his federally protected rights.

50.     As a result of Plaintiff opposing race discrimination and retaliation and/or his participation in an E.E.O.C. filing and investigation regarding same the Defendant subjected Plaintiff to unlawful retaliation with respect to the terms, conditions, and privileges of his employment including being subjected to a retaliatory hostile work environment, being subjected to unwarranted discipline, and culminating in his termination.

51.     This conduct was intentional, willful, malicious, and in reckless indifference to the Plaintiff's federally protected rights.

52.     As the result of the Defendant's conduct the Plaintiff was deprived of income and other employment benefits due him. He also suffered embarrassment, humiliation, inconvenience, and mental distress. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, front pay, an injunction, and compensatory and punitive damages is his only means of securing adequate relief.

53.     Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT I - RACE DISCRIMINATION
## IN VIOLATION OF TITLE VII

54.     The Plaintiff realleges and incorporates by reference paragraphs 1-53 above with the same force and effect as if fully set out in specific detail hereinbelow.

55.     As set out in detail above, the Defendant intentionally and maliciously discriminated against the Plaintiff by subjecting him to stricter scrutiny and disparate treatment than similarly situated white employees, by subjecting him to disparate discipline, and by terminating his employment, at least in part, on the basis of the Plaintiff's race, African-American.

56.     All acts of race discrimination were done wilfully and with malicious and reckless disregard for the rights of the Plaintiff.

57.     As the result of the Defendant's conduct the Plaintiff was deprived of income and other benefits due him. Plaintiff also suffered embarrassment, humiliation, inconvenience, and mental distress.

58.     Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

59.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, front pay, an injunction, and compensatory and punitive damages is his only means of securing adequate relief.

## COUNT II - RACIAL DISCRIMINATION
## IN VIOLATION OF 42 U.S.C. §1981

60.     The Plaintiff realleges and incorporates by reference paragraphs 1-53 above with the same force and effect as if fully set out in specific detail hereinbelow.

61.     As set out in detail above, the Defendant intentionally and maliciously discriminated against the Plaintiff by subjecting him to stricter scrutiny and disparate treatment

than similarly situated white employees, by subjecting him to disparate discipline, and by terminating his employment, at least in part, on the basis of the Plaintiff's race, African-American.

62.     All acts of race discrimination were done wilfully and with malicious and reckless disregard for the rights of the Plaintiff.

63.     The Defendant is liable under 42 U.S.C. §1981 for such discrimination because it knew or should have known of the racial discrimination and condoned, ratified and otherwise allowed the racially discriminatory behavior to continue.

64.     Plaintiff suffered damages as a proximate result of these violations, which were caused by the Defendant's policy or custom to allow racial discrimination, and/or by the defendant's failure to adequately train or to otherwise prevent or remedy racial discrimination which was caused by the Defendant's deliberate indifference to the Plaintiff's federally protected rights and/or by deliberate indifference to those violations.

65.     The Defendant thus has violated the proscriptions against race discrimination under 42 U.S.C. § 1981.

66.     As the result of the Defendant's conduct the Plaintiff was deprived of income and other benefits due him. Plaintiff also suffered embarrassment, humiliation, inconvenience, and mental distress.

67.     Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

68.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, front pay, an injunction, and compensatory and punitive damages is his only means of securing adequate relief.

## <u>COUNT III - RETALIATION IN VIOLATION OF TITLE VII</u>

69.     The Plaintiff re-alleges and incorporates by reference paragraphs 1-53 above with the same force and effect as if fully set out in specific detail hereinbelow.

70.     As set out above, The Plaintiff made good faith and reasonable complaints of race discrimination and retaliation, opposed race discrimination and retaliation, and participated in an E.E.O.C. filing and investigation regarding same against the Defendant.

71.     Thereafter the Plaintiff was retaliated against because of his opposition to discrimination and/or his participation with the E.E.O.C. by being subjected to a retaliatory hostile work environment, being subjected to unwarranted discipline, and being terminated from his employment.

72.     Said retaliation and creation of a retaliatory hostile work environment was done maliciously, willfully, and with reckless disregard for the rights of the Plaintiff.

73.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunction relief, and compensatory and punitive damages is his only means of securing adequate relief.

74.     Plaintiff is now suffering, and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## <u>COUNT IV - RETALIATION IN VIOLATION OF 42 U.S.C. §1981</u>

75.     The Plaintiff re-alleges and incorporates by reference paragraphs 1-53 above with the same force and effect as if fully set out in specific detail hereinbelow.

76.     As set out above, The Plaintiff made good faith and reasonable complaints of race discrimination and retaliation, opposed race discrimination and retaliation, and participated in an E.E.O.C. filing and investigation regarding same against the Defendant.

11

77.     Thereafter the Plaintiff was retaliated against because of his opposition to discrimination and/or his participation with the E.E.O.C. by being subjected to a retaliatory hostile work environment, being subjected to unwarranted discipline, and being terminated from his employment.

78.     Said retaliation and creation of a retaliatory hostile work environment was done maliciously, willfully, and with reckless disregard for the rights of the Plaintiff.

79.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunction relief, and compensatory and punitive damages is his only means of securing adequate relief.

80.     Plaintiff is now suffering, and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.     Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff, as secured by Title VII and 42 U.S.C. § 1981.

2.     Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate Title VII of the Act of Congress known as "The Civil Rights Act of 1964," as amended by "The Civil Rights Act of 1991," and 42 U.S.C. § 1981.

3.     Grant the Plaintiff an order requiring the Defendant to make him whole by awarding him reinstatement into the position he would have occupied in the absence of racial discrimination and/or retaliation by the Defendant with the same seniority, leave and other benefits of the position (or

front pay), back pay (with interest), and by awarding Plaintiff compensatory, punitive, and/or nominal damages.

4.     The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.


Respectfully submitted,

/s/ Temple D. Trueblood
Temple   D.   Trueblood   (TRU014)
Attorney for Plaintiff

OF COUNSEL:
WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
ttrueblood@wigginschilds.com

Co Counsel:
Edward L. D. Smith
Post Office Box 1643
Mobile, Alabama 36633
(251) 432 0447



**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.**

s/ Temple D. Trueblood
OF COUNSEL

**Plaintiff requests this Honorable Court to serve via certified mail upon each of the named defendant the following: Summons, Complaint.**

<u>Defendant's Address:</u>

Austal, USA, LLC
c/o Registered Agent
Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

United States Steel Corporation c/o
Registered Agent
Corporation Service Company, Inc. 641
South Lawrence Street Montgomery, AL
36104

s/ Temple D. Trueblood OF
COUNSEL

16